STEPHEN J. COX
ATTORNEY GENERAL

John D. Harjehausen (Alaska Bar No. 9701002)
Assistant Attorney General
Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
Telephone: (907) 269-5190
Facsimile: (907) 276-3697
Email: john.harjehausen@alaska.gov

Attorney for Mattew J. Wertanen

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| FERNANDO OSPINA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW J. WERTANEN, STATE OF | ) | |
| ALASKA, DEPARTMENT OF PUBLIC | ) | |
| SAFETY, | ) | Case No.: 3:19-cv-00224-KFR |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS MATHEW J. WERTANEN, STATE OF ALASKA, AND
DEPARTMENT OF PUBLIC SAFETY'S MOTION FOR SUMMARY
JUDGMENT**

## I.    INTRODUCTION

Defendants Mathew J. Wertanen ("Trooper Wertanen"), State of Alaska ("State"),

and Department of Public Safety ("DPS"), move pursuant to Fed. R. Civ. P. 56 for

summary judgment on all claims asserted by the Plaintiff. As discussed below, there is no

genuine dispute of fact that Trooper Wertanen's use of deadly force was objectively

reasonable and did not violate the Fourth Amendment to the United States Constitution.

Further, plaintiff's claims are barred by the doctrine of qualified immunity and

AS.09.50.250(3) and there is no evidence he breached a duty of care owed to Plaintiff.

As a result, Trooper Wertanen is entitled to summary judgment on Plaintiff's claims

for (1) violation of 42 U.S.C. § 1983; (2) assault and battery; and (3) negligence.[1]

In addition, the State and DPS move for summary judgment on Plaintiff's claims for

(1) negligent failure to train, (2) negligent supervision and retention; and (3) vicarious

liability.[2] The State and DPS are likewise immune from suit under AS.09.50.250(3),

there was no constitutional violation and, there is no genuine issue of fact that

Trooper Wertanen was properly trained, supervised, and retained. In contrast,

Plaintiff Fernando Ospina's plea of guilty to the charge of weapons misconduct

establishes as a matter of law that he was comparatively negligent for possessing and

---

[1] All claims of Plaintiff Traci Reedy have been dismissed. *See* Dkt. 113 Order Granting Motion for Sanctions Against Plaintiff Traci Reedy.

[2] To the extent that plaintiff's seventh cause of action for violation of 42 U.S.C § 1983 mentions that Trooper Wertanen was an agent of the State or DPS, acting pursuant to applicable policies, customs and practices, there can be no liability on this claim against the State because it is not a "person" subject to liability under 42 U.S.C. § 1983. A plaintiff may only maintain an action under §1983 for violations of constitutional rights performed by "person[s] acting under color of state law." *See* 42 U.S.C. § 1983. States, state agencies, and state officials sued in their official capacity are not persons under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). *See also Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001) ("We need not reach the sovereign immunity issue because the State is not a "person" for purposes of § 1983[.]").

*Ospina v. SOA, DPS, & Wertanen*                                    Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                 Page 2 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR      Document 116      Filed 02/27/26      Page 2 of 33

lowering a rifle in the direction of Trooper Wertanen while intoxicated by amphetamines and methamphetamines in violation of AS.11.61.210(a)(1).

## II.    FACTUAL BACKGROUND

On December 10, 2017, Alaska State Trooper dispatch received a frantic 911 call at 10:01 p.m. from Krista Wilson, a resident of Anchor Point, reporting shooting going on "right now," at a neighboring house on Valleyside Avenue.[3] She said four shots were fired and some shots sounded like a pistol and others similar to a .22 rifle.[4] Ms. Wilson stated the shots were fired near the light blue house, the "Sundance house," which was the second house on the right after turning off the Sterling Highway onto Valleyside Drive.[5] Ms. Wilson stated there was a lot of yelling, screaming, people running through the woods with flashlights, and people running around crazy.[6] She reported it was owned by an individual named "Buddy."[7]

Dispatch notified Alaska State Troopers Mathew Wertanen and Sergeant Robert Hunter about the disturbance at the location. Trooper Wertanen was in Kasilof, and it took him about an hour to get there.[8] On the way to the property dispatch advised

---

[3]    Exhibit A at AST 00001.

[4]    *Id.*

[5]    *Id.*

[6]    *Id.*

[7]    *Id.*

[8]    Exhibit B, p. 21.

*Ospina v. SOA, DPS, & Wertanen*                          Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                          Page 3 of 33
Department of Public Safety's Motion for Summary Judgment

that there had been drug history at the residence and prior incidents of shooting.[9] As a result, Trooper Wertanen and Sergeant Hunter stopped short of the address, donned body armor and transitioned from side arms to rifles.[10] The reason for this preparation was that the neighbor had reported gunshots, yelling, and flashlights in the woods. He testified: "[T]hat's what we were responding to. And in – in my mind...– it was a gun call, it was a situation with a gun and we didn't know if people were shooting each other, if people had been shot, if people were waiting there with guns. So we took our rifles just as – I mean – say a heightened level of source... that's going to allow us to deal with an armed threat much safer and effectively."[11] He testified his hand was on the grip but his finger was not on the trigger.[12]

Trooper Wertanen and Sergeant Hunter walked down Valleyside until they came to the property.[13] There were two structures on it, a blue house and a red house.[14] There were lights on in the red house, a porch light, and a person on the porch. The person on the porch was doing something with a generator.[15] Trooper Wertanen and Sergeant Hunter were standing 15 to 20 feet from the red house when the person walked

---

[9]     Exhibit B, pp. 79-80; Exhibit C, pp. 9-10.

[10]    Exhibit B, p. 10.

[11]    *Id.* at 19.

[12]    *Id.* at 12.

[13]    *Id.* at 23.

[14]    *Id.*

[15]    *Id.*

*Ospina v. SOA, DPS, & Wertanen*                                    Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                 Page 4 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR     Document 116     Filed 02/27/26     Page 4 of 33

up the driveway to Valleyside where Trooper Wertanen and Sergeant Hunter were standing.[16] Sergeant Hunter's audio[17] recorded the following verbal exchange with the individual, later identified as Dellan Vanbuskirk ("Mr. Vanbuskirk").

| | |
|---|---|
| Sergeant Hunter: | State Troopers. Let's see your hands. |
| Mr. Vanbuskirk: | [inaudible] |
| Sergeant Hunter: | Shine your light down, not in my eyes |
| Mr. Vanbuskirk: | [inaudible] |
| Sergeant Hunter: | Stay where you're at. Stay where you're at. Stay where you're at! |
| Mr. Vanbuskirk: | …sliding down the hill. |
| Sergeant Hunter: | Get on the ground! |
| Mr. Vanbuskirk: | [inaudible] |
| Sergeant Hunter: | Get on the damn ground! |

At this point it was clear to Trooper Wertanen and Sergeant Hunter that Mr. Vanbuskirk was running away from them.[18] As Sergeant Hunter pursued Vanbuskirk toward the front of the red house (Vanbuskirk in the lead followed by Sergeant Hunter followed by Trooper Wertanen) both Troopers observed Vanbuskirk reach into a sweatshirt pocket, and Sergeant Hunter yelled: "Stop, or I'll shoot!"[19]

Almost instantly the Plaintiff, Fernando Ospina, then took a step out the front door of the red building with a rifle in his hands which started to lower.[20] Trooper Wertanen

---

[16]    *Id*. at 24-26.

[17]    Exhibit D, AST 00652.

[18]    Exhibit B, p. 30.

[19]    *Id.* at 30-31. See also Exhibit D, AST 000652.

[20]    *Id.* at 31.

*Ospina v. SOA, DPS, & Wertanen*                                      Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                   Page 5 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR      Document 116      Filed 02/27/26      Page 5 of 33

fired two shots, one of which struck the Plaintiff in the groin.[21] Only twenty-five (25) seconds transpired from the beginning of Sergeant Hunter's first verbal communication with Mr. Vanbuskirk until Plaintiff exited the red cabin with a rifle and shots were fired.[22]

Trooper Wertanen testified that Plaintiff was directly in front of him and also in a position to see Sergeant Hunter.[23]





---

[21]     *Id.* at 51.

[22]     Exhibit D, AST 000652

[23]     Exhibit B, pp. 35-36, Exhibit 1.

*Ospina v. SOA, DPS, & Wertanen*                                    Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                          Page 6 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR     Document 116     Filed 02/27/26     Page 6 of 33

Plaintiff had both hands on the rifle.[24] Trooper Wertanen explained that the use of force was reasonable from his perspective. He testified:

> A    It was a dynamic situation. I mean taking everything into account, we had a report of gun shots next door, yelling, flashlights running through the woods, I mean all those things, I mean heighten our sense of -- of concern, I mean it -- that -- hearing that makes me think that there could be a gun fight going on or somebody being shot or shot at. We responded to -- we ma -- we responded, we made our approach, again, there was -- there was no gun shots when we showed up, there was no sounds of, like a disturbance, yelling or not, we saw the one person, we didn't know if he was involved in it -- in the incident or not, when we contacted him he put -- he -- he shined the his flashlight was shining in Sergeant Hunter's face, he was given -- we ident --clearly identified ourselves to him, we were wearing State Trooper uniforms, he was given a loud command, State Trooper, show me your hands, he started to run -- he started to run away.

> Q    Right.

> A    And, again, we don't know if that point – at that point if he's involved in the incident, had he just shot somebody and was running away from us, we don't know. And we were running after him, the doorway opened and, again, this is a -- this is a -- a dynamic and – and rapidly evolving situation and as we were chasing this person who we don't know if he's involved in a shooting incident, but it's certainly something that we have to suspect at that point and then the door opens up and somebody steps out on to the porch with a rifle and the barrel of the rifle starts to lower, and -- and -- and he was -- and -- and in – in my mind at that point, our -- simply our pre -- simply our presence was not going to de-escalate that situation.[25]

---

24    *Id.* at 41.

25    *Id.* at 55-56.

*Ospina v. SOA, DPS, & Wertanen*                              Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                    Page 7 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR     Document 116     Filed 02/27/26     Page 7 of 33

Trooper Wertanen explained that he was right in front of the doorway where Plaintiff was exiting and "[h]e could have come out the doorway and as the gun started to lower maybe it – lowered at me."[26] He said "that was the direction it was going and then his attention seemed to focus more to... the right where Sergeant Hunter and the other guy were."[27] According to Trooper Wertanen, although the gun was not directly pointed at him or Sergeant Hunter, "[i]t was getting close to that."[28] Trooper Wertanen testified that "when the door initially opened I perceived the danger greatest at me… because I was the one that was standing right in front of the door."[29] According to Trooper Wertanen, "[t]he manner in which he started to come out the door with the gun, lowering the gun, made me think that he was getting ready to use it."[30]

Sergeant Hunter testified: "As soon as I saw the rifle come out the front door and start to lower towards Trooper Wertanen's direction I feared that he was going to shoot at Trooper Wertanen and then potentially turn and shoot towards me."[31] After the incident Sergeant Hunter suspected Plaintiff had committed the crime of assault in the third degree.[32] He testified: "I specifically saw the gun lower in Trooper Wertanen's

---

[26]    *Id.* at 57.

[27]    *Id.*

[28]    *Id.* at 63.

[29]    *Id.* at 59

[30]    *Id.* at 62.

[31]    Exhibit C, p. 19.

[32]    *Id.* at 42.

*Ospina v. SOA, DPS, & Wertanen*                              Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                        Page 8 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR     Document 116     Filed 02/27/26     Page 8 of 33

direction.[33] I was fearful for him at that point, so I would recognize that he would be fearful for himself." [34]

After the shots were fired, Trooper Wertanen retreated to cover and concealment.[35] Plaintiff's girlfriend, Traci Reedy, yelled out that her boyfriend had been shot and was dying.[36] Trooper Wertanen requested a medic from dispatch.[37] Sergeant Hunter demanded Ms. Reedy come outside and show her hands.[38] Thereafter, the troopers went inside to secure the building and attended to Plaintiff. They located the long gun – a loaded .22 caliber rifle –at the plaintiff's feet.[39] Sergeant Hunter's live audio confirms the request for dispatch of a medic to the location and the troopers' provision of medical treatment to Plaintiff upon entering the building.[40] Specifically, they asked Plaintiff where he was shot, and he said the groin.[41] They put pressure on the wound using a bottle and clamped the bottle to the wound using a tourniquet to stop the flow of the blood.[42]

---

[33]     *Id.* at 43.

[34]     *Id.*

[35]     Exhibit B at 55, 77-78.

[36]     *Id.* at 80-81; Exhibit D at AST 000652.

[37]     Exhibit E, AST0002C at minute 7:07; Exhibit F AST0003C.

[38]     Exhibit D at AST 000652.

[39]     *Id.*

[40]     Exhibit D at AST00652.

[41]     *Id.*

[42]     *Id.*

*Ospina v. SOA, DPS, & Wertanen*                                                  Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                               Page 9 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR     Document 116     Filed 02/27/26     Page 9 of 33

Within minutes Trooper Norwood arrived provided medical treatment until EMS arrived.[43]

The plaintiff testified that on the evening of the incident he had used his .22 rifle for target practice on the Valleyside property shooting at a pallet.[44] He admitted: "I shot it twice at the target practice."[45] It was dark outside.[46] When asked about the time of day he said "I don't know" and then said "[a]bout six o'clock that evening maybe."[47]

Right before Plaintiff's encounter with Trooper Wertanen, the Plaintiff testified that he was sleeping and was awoken by a noise.[48] He asked his girlfriend, Ms. Reedy, to hand him his gun which was on her side of the bed.[49] Despite initially claiming a recollection of certain events, he later recanted and testified that he had no memory of certain details. For example, Plaintiff initially testified that he left the home with an unloaded gun.[50] He later testified that the rifle had clip in it with bullets but it wasn't cocked.[51] Similarly, he initially testified that the rifle was under his left shoulder as he

---

[43]     *Id.*

[44]     Exhibit G, pp. 64-65.

[45]     *Id.* at 65.

[46]     *Id.*

[47]     *Id.* at 66.

[48]     Exhibit G, pp. 43-45.

[49]     *Id.* at pp. 51, 59.

[50]     *Id.* at 46-47.

[51]     *Id.* at 84-85.

*Ospina v. SOA, DPS, & Wertanen*                                        Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                          Page 10 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR     Document 116     Filed 02/27/26     Page 10 of 33

approached the door and he never touched it with his left hand.[52] Subsequently, Plaintiff

admitted he had no memory of how he was carrying the .22 rifle when he opened and

stepped out the door.[53] Further, he has no memory of whether the rifle was raised and

lowered.[54] According to Plaintiff, he did not see Mr. Vanbuskirk, Sergeant Hunter or

Trooper Wertanen prior to opening the door and heading outside.[55] Because he did not

see them, he did not know if his gun was pointed at them.[56] After he was shot, he fell

backward and the rifle fell out of his hand.[57]

     As a result of the incident, the Plaintiff was later criminally indicted with a

misdemeanor count of misconduct involving weapons in the fourth degree in violation

of AS.11.61.210(a)(1) and two felony counts of assault in the third degree pursuant to

AS.11.41.220(a)(1)(A).[58] With respect to the weapon's misconduct charge, it was alleged

that Plaintiff illegally possessed a firearm while impaired with methamphetamines and/or

---

[52]    *Id.* at 59-60.

[53]    *Id.* at 60.

[54]    *Id.*

[55]    *Id. at 51, 60.*

[56]    *Id.* at 61.

[57]    *Id.* at 83-85.

[58]    Exhibit H.

*Ospina v. SOA, DPS, & Wertanen*           Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and           Page 11 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR    Document 116    Filed 02/27/26    Page 11 of 33

amphetamines.[59] On November 12, 2024, Plaintiff entered a guilty plea to the charge of possessing a weapon while intoxicated.[60]

## III.   STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, a motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[61] The party moving for summary judgment "bears the initial burden of demonstrating the absence of a genuine issue of fact for trial."[62] However, "[w]hen the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case."[63] Once the moving party has made that showing, the nonmoving party must provide evidence that "set[s] forth specific facts showing that there is a genuine issue for trial."[64]

---

[59]    *Id.*

[60]    Exhibit G, pp. 28; 87-90; Exhibit 13.

[61]    Fed. R. Civ. P. 56(a).

[62]    *Deveraux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

[63]    *Deveraux v. Abbey*, 263 F.3d at 1076 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

[64]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

*Ospina v. SOA, DPS, & Wertanen*                                     Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                          Page 12 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR      Document 116      Filed 02/27/26      Page 12 of 33

## IV. ARGUMENT

### A. Plaintiff's 42 U.S.C. 1983 claim against Trooper Wertanen is barred by the federal doctrine of qualified immunity.

Government officials sued in their individual capacities may raise the affirmative defense of qualified immunity to a claim under 42 U.S.C. § 1983.[65] The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[66] A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[67] The United States Supreme Court has stated: "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."[68]

"[Q]ualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted."[69] The protection applies regardless of whether the

---

[65]     *Mullenix v. Luma*, 577 U.S. 7, 11, 136 S. Ct. 305, 308, 193 Led.2d 255 (2015).

[66]     *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

[67]     *Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012).

[68]     *Ashcroft v. al–Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).

[69]     *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

*Ospina v. SOA, DPS, & Wertanen*                                     Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                   Page 13 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR     Document 116     Filed 02/27/26     Page 13 of 33

officer's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.[70] It operates to protect officers from the sometimes "hazy border between excessive and acceptable force."[71] And it broadly operates to protect all but the plainly incompetent or those who knowingly violate the law.[72]

Under the totality of the circumstances, and as a matter of law, Trooper Wertanen's use of deadly force did not violate Plaintiff's Fourth Amendment right[73] to be free of unlawful seizure. The United States Supreme Court has long recognized that the right to make an investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.[74] "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application."[75] As a result, careful attention must be given to the facts and circumstances of each particular

---

[70] *Butz v. Economou*, 438 U.S. 478, 507, 98 S. Ct. 2894, 2911, 57 L. Ed. 2d 895 (1978).

[71] *Saucier v. Katz*, 533 U.S., at 206, 121 S.Ct. 2151.

[72] *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 534, 537, 116 L. Ed. 2d 589 (1991)(citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)).

[73] *See Tennessee v. Garner*, 471 U.S. 1, 7-22, 105 S.Ct. 1694, 1699-1707, 85 L.Ed.2d 1 (1985)(holding a claim of excessive force during investigatory stops or to effect arrest are analyzed under a Fourth Amendment standard).

[74] *See Terry v. Ohio*, 392 U.S. 1, 22-27, 88 S. Ct. 1868, 1880-1883, 20 L. Ed. 2d 889 (1968)(recognizing the interest of effective crime prevention and detection "underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.").

[75] *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979)

*Ospina v. SOA, DPS, & Wertanen*
Defendants Mathew J. Wertanen, State of Alaska, and
Department of Public Safety's Motion for Summary Judgment

Case No.: 3:19-cv-00224-KFR
Page 14 of 33

Case 3:19-cv-00224-KFR     Document 116     Filed 02/27/26     Page 14 of 33

case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.[76]

"Excessive force claims ... are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred."[77] The reasonableness of an officer's use of force is evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[78] This calculus recognizes that officers must make split-second judgments regarding the amount of force necessary in a particular situation and that the circumstances surrounding those judgments can be "tense, uncertain, and rapidly evolving."[79]

Factors used to evaluate the application of the use of force include:

"(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resists detention or attempts to escape."[80] The most important element in an excessive force

---

[76]    *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989)

[77]    *Saucier v. Katz*, 533 U.S. 194, 207, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

[78]    *Graham*, 490 U.S. at 396, 109 S.Ct. 1865.

[79]    *Id.* at 397, 109 S.Ct. 1865.

[80]    *Graham*, 490 U.S. at 388.

*Ospina v. SOA, DPS, & Wertanen*                                    Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                          Page 15 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR      Document 116      Filed 02/27/26      Page 15 of 33

claim is whether the individual posed an immediate threat to the officers or others.[81]

Sergeant Hunter and Trooper Wertanen responded to a 911 call of gunshots fired. As

testified by Sergeant Hunter, "it was a gun call, it was a situation with a gun and we

didn't know if people were shooting each other, if people had been shot, if people were

waiting there with guns." He further testified that because the caller stated that people

were running through the woods at night and firing weapons they were responding to "a

long list of potential crimes."[82] However, what is undisputed is that upon encountering

Mr. Vanbuskirk, he failed to obey police commands, failed to stay where he was at, did

not identify himself, and instead ran away with hands in his pockets which put Sergeant

Hunter in fear that he had a weapon. Sergeant Hunter's audio evidences precise, clear

commands, which elevated in volume to yells as he shouted: "Stop or I'll shoot!"[83] It was

only after that shout, that within a second or two Plaintiff opened the door of the red

house, directly in front of Trooper Wertanen, with two hands on a rifle which was

lowering to firing position. As Trooper Wertanen testified, "the gun lowered at me."[84]

"[T]hat was the direction."[85]

---

[81]    *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (quoting Graham, 490 U.S. at 396).

[82]    Exhibit C, p. 22.

[83]    Exhibit B, pp. 30-31; Exhibit D, AST 00652.

[84]    Exhibit B, p. 57.

[85]    *See Tennessee v. Garner*, 471 U.S. 1, 11, 105 S. Ct. 1694, 1701, 85 L. Ed. 2d 1 (1985)(holding "if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened

*Ospina v. SOA, DPS, & Wertanen*          Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and          Page 16 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR    Document 116    Filed 02/27/26    Page 16 of 33

Plaintiff pled guilty to weapons misconduct in the fourth degree related to brandishing a weapon that night while under the influence of methamphetamines and amphetamines. His intoxication and impairment are established for the purpose of this case.[86] Significantly, his possession of the weapon while intoxicated endangered the public as well as Sergeant Hunter and Trooper Wertanen. Further, Plaintiff was also charged with two counts of assault in the third degree in violation of AS.11.41.220(a)(1)(A) for pointing a weapon at Trooper Wertanen. Sergeant Hunter believed that Plaintiff committed this offense when he lowered his rifle toward Trooper Wertanen.[87] He testified that he "specifically saw the gun lower in Trooper Wertanen's direction. I was fearful for him at that point, so I would recognize that he would be fearful for himself." However, the assault charges against Plaintiff were ultimately dismissed.

Precedent established in December 2022 that officers may shoot an individual who points a loaded rifle in their direction. Undersigned counsel conducted a diligent search of precedent and could not locate a case clearly establishing that, despite a rapidly evolving situation with an unexpected threat and just a second or two to react, officers

_____

infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.").

[86]     See *Granados-Mondragon v. I.N.S*, 28 Fed. Appx. 695 (9th Cir. 2002) (citation omitted) (It is "settled law in this circuit that a guilty plea may be used to establish issue preclusion in a subsequent civil suit."

[87]     Exhibit C, pp. 42-43.

*Ospina v. SOA, DPS, & Wertanen*                                    Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                          Page 17 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR     Document 116     Filed 02/27/26     Page 17 of 33

must always warn an intoxicated individual lowering a loaded rifle in their direction not to point the gun at them or they will shoot. The doctrine of self-defense is common knowledge. Sergeant Hunter testified that he had "zero time" to do more than an initial assessment of the danger.[88] Trooper Wertanen testified that he did not have enough time to shout a warning before shooting and he did not believe such a shout would have de-escalated the situation because the "manner in which he started to come out the door with the gun, lowering the gun, made me think that he was getting ready to use it."[89]

The undisputed evidence is the troopers announced their presence to Mr. Vanbuskirk, who then ran. Subsequently, Sergeant Hunter yelled commands for him to stop. Undersigned counsel conducted a diligent search of precedent and could not find a case clearly establishing that a trooper must always approach a residence in a marked patrol car with lights flashing when responding to a 911 call of gunshots being fired. Plaintiff may argue that Trooper Wertanen could have shouted a warning and then moved to cover without firing a shot at Plaintiff. However, there was insufficient time and this argument is nothing more than an attempt to analyze the incident with the "20/20 vision of hindsight," as opposed to the rapidly evolving situation which occurred. In short, no case "clearly establishes" that Trooper Wertanen's conduct violated the Fourth Amendment. His conduct was reasonable under the totality of the circumstances

---

[88]     Exhibit C, p. 44.

[89]     Exhibit B, pp. 61-62

*Ospina v. SOA, DPS, & Wertanen*                     Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                     Page 18 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR     Document 116     Filed 02/27/26     Page 18 of 33

known to him at the time. More than merely evincing a reasonable misapprehension of the law—which itself would have entitled him to immunity—his conduct actually aligned with the legal standards governing law enforcement's use of deadly force. When viewing the totality of the circumstances, including the presentation of a gun lowering in the direction of Trooper Wertanen, as well as Plaintiff's intoxication with methamphetamines, there is no genuine dispute of material fact that Plaintiff posed a significant risk to Trooper Wertanen and the public. Even if Trooper Wertanen's actions fell in the "'hazy border between excessive and acceptable force,'" he would still be entitled to qualified immunity because it broadly operates to protect all but the plainly incompetent or those who knowingly violate the law.[90] There is simply no evidence that Trooper Wertanen was either incompetent or knowingly violated the law when he fired at Plaintiff, who exited a door directly in front of him, and was lowering a load rifle in Trooper Wertanen's direction.[91] Accordingly, Trooper Wertanen is entitled to qualified immunity as to Plaintiff's claim for violation of 42 U.S.C. § 1983.

---

[90]    *See Saucier v. Katz*, 533 U.S. 194, 206, 121 S. Ct. 2151, 2158, 150 L. Ed. 2d 272 (2001)("If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed").

[91]    *See Long v. City & Cnty. of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007)

*Ospina v. SOA, DPS, & Wertanen*                                          Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                        Page 19 of 33
Department of Public Safety's Motion for Summary Judgment

**B.    The State of Alaska, Department of Public Safety and Trooper Wertanen are immune from suit for assault and battery.[92]**

There is no evidence that Sergeant Hunter or Trooper Wertanen acted in their individual, as opposed to official capacities as officers. They were trained and employed officers of the State and DPS who responded to a 911 call of gunshots fired in a neighborhood. Neither officer had previously been to the location on Valleyside Avenue and the visit to the location was for the purpose of investigating the 911 call. There is no evidence the officers were not authorized or employed to go to the location carrying sidearms and rifles in their capacities as officers or to investigate alleged weapons misconduct in the neighborhood. There is no evidence that the officers' encounter with Vanbuskirk or Plaintiff was in bad faith or resulted from malice or intentional misconduct.

Sergeant Hunter and Trooper Wertanen acted in their official capacities within the course and scope of their employment when they encountered Mr. Vanbuskirk at the end of the driveway for the purpose of investigating possible misconduct involving weapons. He refused to identify himself, obey police commands, and ran. It is clear that the officers were authorized to temporarily detain him.[93] Further, when he ran he precluded the

---

[92]    *See* Amended Complaint, ¶¶ 42-50, 75-76. Plaintiff's first cause of action is for assault and battery against Trooper Wertanen and Plaintiff's sixth cause of action seeks to hold the State of Alaska and Department of Public Safety vicariously liable for Trooper Wertanens' acts within the scope of his employment.

[93]    *See* AS.12.50.201(a)("A peace officer may temporarily detain a person under circumstances that give the officer reasonable suspicion that (1) the person... was at or

*Ospina v. SOA, DPS, & Wertanen*                                    Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                          Page 20 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR      Document 116      Filed 02/27/26      Page 20 of 33

officers from obtaining lawful identification, photographs, or fingerprints related to his identity.[94] Further, Plaintiff ultimately pled guilty to criminal weapons misconduct for possessing a firearm while under the influence of amphetamines and methamphetamines.[95]

The State of Alaska, Department of Public Safety, and Trooper Wertanen, are immune from suit under state law for claims that arise out of assault and battery. AS.09.50.250(3) states in pertinent part: "[A]n action may not be brought if the claim... (3) arises out of assault, battery, false imprisonment, [or] false arrest." Because there is no genuine issue of fact that Trooper Wertanen was acting in his official capacity as an employee of the State of Alaska, Department of Public Safety, they are statutorily immune from suit pursuant to AS.09.50.250(3).

---

near the scene of... misconduct involving weapons"). *See also United States v. Hensley*, 469 U.S. 221, 227, 105 S. Ct. 675, 679, 83 L. Ed. 2d 604 (1985) acknowledging police authority to stop a person when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity). *See also*, *Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cnty.*, 542 U.S. 177, 185, 124 S. Ct. 2451, 2458, 159 L. Ed. 2d 292 (2004)(quoting *INS v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)("[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure.).

[94] AS.12.50.201(f) states: "A person who refuses or resists the taking of photographs commits a class B misdemeanor."

[95] Exhibit G, pp. 28, 87-90, Exhibit 13.

*Ospina v. SOA, DPS, & Wertanen*               Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and          Page 21 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR    Document 116    Filed 02/27/26    Page 21 of 33

**C.    Plaintiff's negligent training claim and negligent supervision and retention claims are barred by AS.09.50.250(3).**

The State of Alaska and Department of Public Safety are also entitled to summary judgment on Plaintiff's claims for negligent training, supervision, and retention. Plaintiff's third cause of actions is for direct negligence against the State and DPS for their alleged failure to train its officers.[96] Plaintiff alleges in his amended complaint: "Defendant State of Alaska, DPS, breached its duty to properly train Defendant Wertanen, the second trooper than accompanied him on December 10, 2017, and other troopers at the scene."[97] According to Plaintiff, he "was the victim of various torts inflicted by Defendant Wertanen or other troopers and he was severely injured and damaged."[98] Similarly, Plaintiff's fourth cause of action alleges the State and DPS negligently supervised and retained Trooper Wertanen. Plaintiff alleges the State and DPS were negligent for allowing him to be "armed with an assault rifle" and issuing him one "when he was insufficiently trained to use the weapon."[99] However, despite pleading them as negligence claims, both claims arise out of Trooper Wertanen's shooting of the

---

[96]    Dkt. 1, Exhibit 1, Amended Complaint, ¶ 57.

[97]    *Id.* at ¶ 58.

[98]    *Id.* at ¶ 59.

[99]    *Id.* at 63

*Ospina v. SOA, DPS, & Wertanen*                                    Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                            Page 22 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR      Document 116      Filed 02/27/26      Page 22 of 33

plaintiff and are thus substantively claims for assault and battery.[100] Accordingly, the

State and DPS are immune from suit on these claims.

In the instant case, the State and DPS may only be held liable for harm caused by

intentional torts provided that they "breached some independent duty that has a basis

other than negligent supervision, training, or hiring of government employees."[101] Here,

Plaintiff alleges no such independent duty. Rather, the alleged "wrong" underlying

Plaintiff's claim arises directly out of a state employee committing battery and assault.

Similarly, in *Heisey*, plaintiff's direct claim against the State for negligent training was

barred by AS.09.50.250(3) because the claim was "entirely dependent on the State's

status as the correctional officers' employer."[102] Here, Plaintiff's assertion of liability

against the State and DPS is wholly dependent on the employment status of Sergeant

Hunter and Trooper Wertanen—if they were not State employees, Plaintiff would have

no cognizable action against the State and DPS. Because Plaintiff's negligent training,

supervision and retention claims "merely assert[s] breaches of [the State's] duty to

---

[100]     *State, Dep't of Corr. v. Heisey*, 271 P.3d 1082, 1092 (Alaska 2012) (citation omitted) ("We first note that regardless of the label that a claimant attaches to his or her tort, we will look first to the substance of the claim. If the substance of the claim shows that it falls within the intentional tort exceptions, 'the courts will ignore this label and treat the claim as one within the list of exceptions if the pleaded facts seem to warrant.'").

[101]     *Dapo v. State*, 454 P.3d 171, 181 (Alaska 2019) (quoting *Kinegak v. State, Dep't of Corr.*, 129 P.3d 887, 891 (Alaska 2006)).

[102]     *State, Dep't of Corr. v. Heisey*, 271 P.3d 1082, 1092–93 (Alaska 2012).

*Ospina v. SOA, DPS, & Wertanen*                          Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                    Page 23 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR     Document 116     Filed 02/27/26     Page 23 of 33

exercise due care in hiring, training, and supervisi[on]" of the intentional tortfeasor, they

are barred by AS.09.50.250(3).[103]

### D. There is no evidence the State of Alaska, Department of Public Safety negligently failed to train the Alaska State Troopers.

Even if A.S. 09.50.250(3) did not apply to Plaintiff's failure to train claim, there is

no genuine dispute of fact that the officers were properly trained. Plaintiff's police

practices expert, Kenneth Waller, could not cite any DPS policy, procedure or guideline

that was violated. Mr. Waller testified that the third step in his methodology

> involves comparing what and why the involved officers did with various standards of training and practice. Standards of training and practice include relevant Supreme Court cases; departmental policies and procedures; applicable statewide police training programs/systems; model policies, training and research from such institutions as the International Association of Chiefs of Police, Police Executive Research Forum, National Criminal Justice Reference Service, Commission on Accreditation for Law Enforcement Agencies, Public Agency Training Council, and the Northwestern University Center for Public Safety.

However, Mr. Waller admitted he did not review any of the Alaska Department of

Public Safety's policies, practices or training materials. He testified:

> Q     Okay. And then the reason I'm asking you is records have been disclosed by the co-defendant, Department of Public Safety, related to their policies and practices, and I didn't see any reference to that in your materials reviewed. And you haven't reviewed any of those discovery responses related to the Alaska Department of Public Safety's policies, practices, or training, have you?
> A     I did minimally, but, no, I did not.[104]

---

[103]    *B.R. v. State, Dep't of Corr.*, 144 P.3d 431, 435 (Alaska 2006).

[104]    Exhibit I, *pp.* 43-44.

*Ospina v. SOA, DPS, & Wertanen*                                     Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                           Page 24 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR     Document 116     Filed 02/27/26     Page 24 of 33

Subsequently, Mr. Waller admitted that Trooper Wertanen was properly trained.

He testified:

> Q      Well, what I'm trying to find out is are you going to offer any opinions in this case that my client, Trooper Wertanen, wasn't properly trained by the Department of Public Safety?
>
> A      I did not include that in my report. And so when you asked me previously if I was going to present additional opinions. I said only if I am asked about questions and I have an opinion about it.
>
> Q      Okay. Well, do you have an opinion as to whether Trooper Wertanen was properly trained by the Department, Alaska Department of Public Safety?
>
> A      I would expect that he was.[105]

Accordingly, because there is no genuine issue of material fact that Sergeant Hunter and Trooper Wertanen were properly trained, Defendants are entitled to summary judgment on plaintiff's third cause of action as a matter of law. Regardless, Trooper Wertanen did not violate Plaintiff's Fourth Amendment rights when he utilized deadly force against Plaintiff. Because there was no constitutional violation of Plaintiff's rights, there is no basis for finding the officers inadequately trained, supervised or retained.[106]

---

[105]      Exhibit I, pp. 42-44.

[106]      *See Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) (finding municipal defendants could not be held liable because no constitutional violation occurred and, therefore, there was no basis for a finding of inadequate training).

*Ospina v. SOA, DPS, & Wertanen*                                        Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                              Page 25 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR      Document 116      Filed 02/27/26      Page 25 of 33

**E.**     **Trooper Wertanen is entitled to qualified immunity to plaintiff's common law tort claims.**

In *Manness v. Daily*, 307 P.3d 894, 903 (Alaska 2013), the Alaska Supreme Court recognized that a peace officer is entitled to common law qualified immunity from state tort claims pursuant to the three-step analysis set out in *Aspen Exploration Corp. v Sheffield*[107] and *Alpine Industries, Inc. v Feyk*.[108] The "test for official immunity from a common law tort claim asks three questions: 'First, does the doctrine of official immunity apply to the state official's conduct? Second, if it does apply, is the immunity absolute or qualified? And third, if it is only a qualified immunity, did the state official act corruptly, maliciously, or in bad faith?'"[109]

First, it cannot reasonably be disputed that investigating a 911 call of possible weapons misconduct was within the troopers' authority. In *Manness* the court recognized that "making arrests and seizing property incident to arrests is conduct that falls within the troopers' usual authority.'"[110] Second, the Alaska Supreme Court has held that qualified immunity applies to such discretionary acts.[111] Third, there is no genuine dispute of material fact that Trooper Wertanen acted in good faith. In *Prentzel*, the court

---

[107]     739 P.2d 150, 158 (Alaska 1987).

[108]     22 P.3d 445, 447 (Alaska 2001).

[109]     *Manness v. Daily*, 307 P.3d 894, 903 (Alaska 2013) (quoting *Alpine Industries, Inc. v Feyk*, 22 P.3d 445, 447–48 (Alaska 2001) (citations omitted)).

[110]     *Manness*, 307 P.3d at 904 (citing *Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 584 (Alaska 2007)).

[111]     *Id.*

*Ospina v. SOA, DPS, & Wertanen*                                    Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                          Page 26 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR     Document 116     Filed 02/27/26     Page 26 of 33

recognized that "before malice can become a disputed question of fact" to defeat a motion for summary judgment, "the record must contain at least some objective evidence establishing facts capable of supporting an inference of malice."[112] Here there is no evidence supporting malice on behalf of Trooper Wertanen. Rather, because his conduct was objectively reasonable, it follows that he acted in good faith and was not grossly negligent. Accordingly, he is entitled to qualified immunity from Plaintiff's common law tort claims as a matter of law.

### F. Plaintiff received prompt and appropriate medical treatment and Trooper Wertanen is entitled to summary judgment as a matter of law on plaintiff's claim for negligence.

Plaintiff has asserted a claim for negligence against Trooper Wertanen for allegedly failing to exercise reasonable care in providing medical treatment to Plaintiff.[113] This claim is also substantively a claim for assault and battery. Plaintiff alleges Trooper Wertanen breached his duty of reasonable care "(a) in negligently or recklessly claiming Mr. Ospina aimed his gun at a trooper, causing other troopers to delay getting Mr. Ospina immediate medical treatment; and (b) in negligently or recklessly failing to arrange for immediate medical treatment for Mr. Ospina who was severely wounded."[114] However, Plaintiff cannot testify that he did not point his gun at Trooper Wertanen because he has

---

[112]   *Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 584 (Alaska 2007).

[113]   Dkt. 1, Exhibit 1, Amended Complaint, ¶¶ 51-55.

[114]   *Id.* at ¶ 53.

*Ospina v. SOA, DPS, & Wertanen*                                        Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                              Page 27 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR      Document 116      Filed 02/27/26      Page 27 of 33

no memory regarding whether he did or did not.[115] The testimony of Sergeant Hunter and

Trooper Wertanen establishes that Plaintiff was lowering his loaded rifle in the direction

of Trooper Wertanen.[116] More importantly, Plaintiff denied that Trooper Wertanen made

any statements related to delaying medical treatment. He testified:

> Q    Who do you recall first came through the doorway?
>
> A    An officer. I'm not sure who it was.
>
> Q    Okay. And what did that officer do?
>
> A    He looked at me and told me what I told you earlier, that if he knew I'd pointed rifle at his partner, he wouldn't be helping me. And I looked at him and said, "I need medical emergency treatment now." And that's all I said to him. I lay there for at least another half hour, 45 minutes.
>
> Q    Okay. So do you know who the individual was that made that statement to you?
>
> A    No, I don't.
>
> Q    So you don't know if it was my client, Trooper Wertanen?
>
> A    Well, I know -- **I know it wasn't him. I know it was a different officer** that came in. Might have been Hunter. I'm not sure.[117]

---

[115]    Exhibit G, p. 60.

[116]    Exhibit B, pp. 30-31, 57.

[117]    Exhibit G, Ospina depos, pp. 68-69 (bold added).

*Ospina v. SOA, DPS, & Wertanen*                                  Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                          Page 28 of 33
Department of Public Safety's Motion for Summary Judgment

In summary, Plaintiff's own testimony establishes that it was *not* Trooper Wertanen who allegedly made this statement.[118]  Further, Plaintiff ultimately admitted that he simply lacked any recollection of anyone assisting him.[119]

The evidence, including Trooper Wertanen's live audio to dispatch[120] and Sergeant Hunter's live audio[121] after shots were fired, overwhelmingly establishes that the troopers immediately requested dispatch of a medic to the location and provided medical treatment to Plaintiff within minutes of entering the building.[122] They asked where he was shot, and he said the groin. They put pressure on the wound using a bottle and clamped the bottle to the wound using a tourniquet to stop the flow of the blood. They continued to provide treatment until emergency medical technicians arrived who assumed management of Plaintiff's condition. There is simply no evidence of any breach of duty or that any delay in the provision of treatment proximately caused any injuries or damages.  Accordingly, because reasonable minds[123] could not disagree that Trooper Wertanen obtained prompt medical treatment for the Plaintiff, he is entitled to summary judgment on Plaintiff's negligence claim.

---

[118]    Sergeant Hunter is not an individual defendant in this case. Rather, Plaintiff's claim for negligence is only asserted against Trooper Wertanen.

[119]    Exhibit G, p. 71.

[120]    Exhibit E, AST00002.

[121]    Exhibit D, AST00652.

[122]    *See also*, Exhibit B, p. 82-85.

[123]    *See Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987) (recognizing summary judgment to the defendants must be granted if reasonable minds could not differ).

*Ospina v. SOA, DPS, & Wertanen*                                        Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                          Page 29 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR     Document 116     Filed 02/27/26     Page 29 of 33

**G.** **Plaintiff Fernando Ospina was negligent per se for possessing and brandishing a firearm while intoxicated and impaired.**

Defendants the State of Alaska, Department of Public Safety, and Trooper Wertanen move the court for summary judgment establishing that the Plaintiff was negligent per se as a matter of law. Specifically, Plaintiff's guilty plea to the charge of weapons misconduct in the fourth degree, establishes Plaintiff's negligence per se. It is well established that a statute may establish a minimum standard of conduct and that failure to adhere to it can establish negligence per se.[124]

> The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part (a) to protect a class of persons which includes the one whose interest is invaded, and (b) to protect the particular interest which is being invaded, and (c) to protect that interest against the kind of harm which has resulted, and (d) to protect that interest against the particular hazard from which the harm results.

With respect to the incident at issue, Plaintiff pled guilty to violating AS.11.61.210(a)(1). "Intoxication" and "impairment" are essential elements of AS.11.61.210(a)(1) which states:

> A person commits the crime of misconduct involving weapons in the fourth degree if the person

---

[124] *See Nazareno v. Urie*, 638 P.2d 671 (Alaska 1981)(citing Restatement (Second) of Torts § 286 (1965)(overruled in part by *Kavorkian v. Tommy's Elbow Room, Inc.*, 711 P.2d 521 (Alaska 1985)(holding AS 04.15.020(a), which makes it unlawful to give or sell intoxicating liquors to an intoxicated person, established a standard of care for purposes of negligence per se. *Accord Morris v. Farley Enterprises, Inc.*, 661 P.2d 167 (Alaska 1983).

*Ospina v. SOA, DPS, & Wertanen*
Defendants Mathew J. Wertanen, State of Alaska, and
Department of Public Safety's Motion for Summary Judgment

Case No.: 3:19-cv-00224-KFR
Page 30 of 33

Case 3:19-cv-00224-KFR    Document 116    Filed 02/27/26    Page 30 of 33

(1)     possesses on the person, or in the interior of a vehicle in which the person is present, a firearm when the person's physical or mental condition is impaired as a result of the introduction of an intoxicating liquor or a controlled substance into the person's body in circumstances other than described in AS 11.61.200(a)(7);

As a result of Plaintiff's guilty plea, he is collaterally estopped from disputing his intoxication or impairment while wielding the rifle. AS.11.61.210(a)(1) is designed to protect both individuals and the public from harm that can result from the possession or use of firearms by intoxicated individuals, and Plaintiff and Trooper Wertanen are within this class. Intoxicated individuals have impaired judgment and can accidentally shoot themselves or third-parties. Further, impaired individuals possessing firearms may intentionally but unlawfully target third-parties with it. At his deposition, Plaintiff acknowledged these harms and testified:

Q     Do you believe it is safe to operate a gun while intoxicated?

A     No.

Q     What are the dangers of operating a weapon while intoxicated?

A     Might misfire, might -- might hurt yourself or somebody.

Q     So you could hurt yourself or you could hurt somebody else. Is that right?

A     Yes.[125]

---

[125]     Exhibit G, pp. 89-90.

*Ospina v. SOA, DPS, & Wertanen*                              Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                    Page 31 of 33
Department of Public Safety's Motion for Summary Judgment

In the instant case, Plaintiff was intoxicated and while holding a loaded rifle with two hands lowered it in the direction of Trooper Wertanen, who feared imminent harm, and responded with deadly force. Defendants submit that Plaintiff's possession of the loaded rifle while impaired constitutes negligence per se on the part of the Plaintiff and they are entitled to summary judgment that Plaintiff was comparatively at fault for his injuries.

IV.    **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court enter summary judgment in their favor on all claims asserted by the Plaintiff and find that the Plaintiff was comparatively negligent per se for possessing and brandishing a firearm while intoxicated and impaired as a result of amphetamines and methamphetamines.

DATED: February 27, 2026.

STEPHEN J. COX
ATTORNEY GENERAL


By:    /s/John D. Harjehausen
       John D. Harjehausen
       Assistant Attorney General
       Alaska Bar No. 9701002
       Department of Law
       1031 West Fourth Avenue, Ste. 200
       Anchorage, AK 99501
       Phone: (907) 269-5190
       Facsimile: (907) 276-3697
       Email: john.harjehausen@alaska.gov
       Attorney for Matthew J. Wertanen

*Ospina v. SOA, DPS, & Wertanen*                                    Case No.: 3:19-cv-00224-KFR
Defendants Mathew J. Wertanen, State of Alaska, and                 Page 32 of 33
Department of Public Safety's Motion for Summary Judgment

Case 3:19-cv-00224-KFR        Document 116        Filed 02/27/26        Page 32 of 33

Certificate of Service

I certify that on February 27, 2026 the foregoing **Defendants Mathew J. Wertanen, State of Alaska, and Department of Public Safety's Motion for Summary Judgment** was served electronically on:

Jeffrey J. Barber
Barber and Associates, LLC
jeffb@alaskainjury.com

Chadwick McGrady
Law Office of Chadwick McGrady, P.C.
chad@chadwickmcgrady.com

Jessica Leeah
Chief Assistant Attorney General
Department of Law, Civil Division (Juneau)
jessica.leeah@alaska.gov


/s/John D. Harjehausen
John D. Harjehausen, Assistant Attorney General

*Ospina v. SOA, DPS, & Wertanen*
Defendants Mathew J. Wertanen, State of Alaska, and
Department of Public Safety's Motion for Summary Judgment

Case No.: 3:19-cv-00224-KFR
Page 33 of 33

Case 3:19-cv-00224-KFR    Document 116    Filed 02/27/26    Page 33 of 33